IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A PAYNE,<br><br>    Plaintiff,<br><br>v.<br><br>KELLY HARRINGTON,<br><br>    Defendant. | No. C 11-00960 CRB<br><br>**ORDER DENYING WRIT OF HABEAS CORPUS** |

Petitioner Thomas Payne is a state prisoner at Kern Valley State Prison in Delano, California. Challenging a conviction and sentence from Marin County Superior Court, Payne seeks a writ of habeas corpus under 28 U.S.C. § 2254.

Payne was convicted in May 2007 for being a felon in possession of both a firearm and ammunition. It was his third conviction under California's three-strikes law. As such, it resulted in a sentence of 26 years to life. Payne argues that an impermissible re-enactment of his crime by some jurors visiting the crime scene tainted jury deliberations and denied him a fair trail. He also complains of ineffective trial counsel and alleges prosecutorial misconduct.

For the reasons set forth below, the Court DENIES the petition.

## I.   BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

> On November 15, 2006, at approximately 3:45 p.m., officers Jack Martin and James Bellamy of the San Rafael Police Department made contact with appellant on the corner of Fourth and A Streets in downtown San Rafael. The officers knew appellant was subject to a parole search, and they had previously searched appellant with no problem. Once Officer Martin told appellant that he was going to be

searched, appellant became annoyed, claiming harassment. Appellant pulled a small camera out of his pocket and claimed that was all he had. At that point, Officer Martin turned his attention to Officer Bellamy, who was dealing with a confrontational third party.

When Officer Martin turned back to search appellant, appellant fled down a flight of stairs. He failed to comply with orders to stop. Officer Martin then saw appellant reach his right hand to his waist area and then make "a throwing motion" toward a planter box, which was about a foot or two away from appellant. Within seconds, Officer Martin ran down the stairs and located a Taurus .357 Magnum revolver loaded with six rounds of ammunition in the planter box. The loaded gun was the only foreign item in the planter box, which was free of debris. At that point, Officer Bellamy detained appellant at the end of the hallway; and he was arrested.

Jason Wright, a friend of appellant's, testified for the defense. He witnessed the incident resulting in appellant's arrest. He was standing at the bottom level of the stair landing where the planter was and had an unobstructed view of the planter and appellant. According to Wright, appellant did not throw anything into the planter, nor did appellant make any motion that even looked like a throwing gesture.

After the parties had presented their evidence, but before the case was submitted to the jury, appellant personally stipulated that the court, rather than the jury, could decide count one, which alleged possession of a firearm by a person previously convicted of a violent felony (§ 12021, subd. (a)). The reason for the stipulation was so the jury would not receive evidence that appellant's prior conviction was for a "violent" felony. The court made it clear that the jury's determination of appellant's guilt or innocence on the other counts "would be very meaningful to me." However, the court emphasized that it would retain the ultimate fact-finding power as to count one.

The jury found appellant guilty of count two, alleging possession of a firearm by a person convicted of a felony (§ 12021, subd. (a)(1)), and count three, possession of ammunition by a person convicted of a felony (§ 12316, subd. (b)(1)). Thereafter, the court found appellant guilty of count one.

The court also found all alleged priors to be proven beyond a reasonable doubt, including two prior convictions which qualified as "strike" offenses. Appellant received a total aggregate sentence of 26 years to life. The court used count one to impose a sentence of 25 years to life (§ 1170.12). The court also imposed a consecutive one-year enhancement (§ 667.5, subd. (b)). Each of the terms for count two and count three was stayed pursuant to section 654. This appeal followed.

Opinion, Ex. E (dkt. 8) at 2-3 (footnote omitted).

The Court of Appeal reversed the conviction on the felony possession charge, since it is a necessarily included offense of the count separately tried by the trial judge. Id. at 14-15. Payne sought review at the California Supreme Court, which summarily denied his request. Pet. (dkt. 1) at 1. He filed this petition on March 1, 2011. Id.

2

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant Payne's petition only if the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" federal law when the court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). An "unreasonable application of" federal law is one that "identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. As the Supreme Court has repeatedly reaffirmed, AEDPA requires a heightened level of deference to state court decisions. See, e.g., Harrington v. Richter, 131 S. Ct. 770, 783–85 (2011).[1]

## III.   DISCUSSION

Payne seeks relief under three theories. First, he contends that a re-enactment of his crime by some of the jurors who visited the crime scene violated his right to an impartial jury under the Sixth and Fourteenth Amendments. Pet. at 14. Next, Payne claims that his trial attorney's conduct deprived him of his Sixth Amendment right to effective assistance of counsel. Id. at 14-15. Finally, he argues that prosecutorial misconduct violated his due process rights under the Fourteenth Amendment. Id. at 20.

---

[1] Payne argues that this Court must evaluate the juror misconduct claim de novo because such claims are mixed questions of law and fact. Traverse (dkt. 9) at 2. But AEDPA's highly deferential standard of review applies also to mixed questions of law and fact. See Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004). Accordingly, the only question before this Court is whether the state Court of Appeals contradicted or unreasonably applied federal law when it rejected Payne's juror misconduct claim.

3

1    The California Supreme Court summarily rejected Payne's federal claims, so this
Court must review the judgment of the state Court of Appeal as the last reasoned state court
decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Because that court rejected
Payne's arguments without contradicting or unreasonably applying federal law, his petition
must be denied.

### A.     Jurors' Re-enactment

During trial, Payne's lawyer asked that the jury be allowed to visit the crime scene.
Ex. E at 4. The jury and the prosecutor visited the scene, unaccompanied by either the judge
or the defense lawyer. Id. Before the visit, the trial court told the jurors that the visit would
allow them "a chance to review the scene and walk up and down the stairs." Id. But the
court instructed them not to talk to each other or do experiments. Id. While on site and near
the planter box where police found the handgun, however, "the prosecutor saw jurors making
tossing motions and she observed one juror remove an unidentified object from her purse and
quickly toss it into the planter box." Id.

After learning about the experiment from the prosecutor, the court told the jury that
the re-enactment was improper and could not be considered during deliberations. Id. at 4-5.
It repeated this instruction before deliberations, and the prosecutor reiterated at closing
arguments that only courtroom evidence could be considered. Id. at 5.

Payne argues that the jury re-enactment effectively introduced extrinsic evidence into
jury deliberations, which he claims raises a reasonable probability that the verdict was
tainted. Pet. at 14.

#### 1.     Legal Standard

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based
on the evidence presented at trial. See Turner v. Louisiana, 379 U.S. 466, 472-73 (1965).
This "necessarily implies at the very least that the 'evidence developed' against a defendant
shall come from the witness stand in a public courtroom where there is full judicial
protection of the defendant's right of confrontation, of cross-examination, and of counsel."
Id. The Constitution, however, "does not require a new trial every time a juror has been

4

placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). It requires only a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. See id.

A petitioner claiming juror misconduct due to consideration of extrinsic evidence is entitled to habeas relief only if he can establish that the exposure to outside material had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). In other words, the error must result in "actual prejudice." See Brecht, 507 U.S. at 637.

### 2.   State Court Proceedings

The state Court of Appeal acknowledged that the jurors' conduct was improper. Ex. E at 5. But it followed a two-step test to determine that the conduct was not prejudicial.[2] Id. (citing In re Carpenter, 9 Cal. 4th 634, 652-53). First, the court held that "the results of the reenactment did not introduce new evidence into the jurors' deliberations that was so prejudicial that it undermined the jury's verdict and denied appellant a fair trial." Id. at 6. This is so, the court found, because "nothing suggests that the average reasonable juror would believe" that the re-enactment offered reliable evidence, given that the jurors used an un-identified object "with a different trajectory than the actual gun." Id. Further, the court

---

[2] The test asks (1) whether an objective view of the results of the re-enactment were "inherently and substantially likely to have influenced one or more jurors or (2) whether it is substantially likely that one or more jurors were actually biased against the defendant." Ex. at 5 (citation omitted).
  Both parties direct the Court to a five-factor approach the Ninth Circuit has established to see if jury misconduct constitutes prejudice. See Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir. 1986). The test requires consideration of (1) whether the outside material was actually received, (2) how long it was available, (3) how much consideration the jury gave it, (4) when the outside evidence was introduced, and (5) "any other matter[ ] which may bear on the issue of . . . whether the introduction of extrinsic material [substantially and injuriously] affected the verdict." Mancuso v. Olivarez, 292 F.3d 939, 952 (9th Cir. 2002). The final consideration compels consideration of five more factors, most significantly whether the trial court issued a curative instruction. Id. (citations omitted).
  This approach also shows that Payne was not prejudiced. First, while some jurors did actually receive the outside information by conducting the experiment, the trial court told them to ignore that information. Second, the outside evidence was introduced before the deliberations. Finally, there is no real evidence that the jury discussed or considered the re-enactment. These factors support the conclusion that the state Court of Appeal's decision was reasonable under the Ninth Circuit factors as well.

5

reasoned that "the jurors certainly realized" that they had conducted an experiment under different conditions than Payne faced. Id. Finally, it noted that the extraneous information derived from the experiment was "neutral or irrelevant as to the defendant's guilt" and that, therefore, the presumption of prejudice was rebutted. Id. (citation omitted).

Second, the court held that the nature of the misconduct and surrounding circumstances did not make the error substantially likely to bias at least one juror against Payne. Id. It specifically noted that the trial judge's repeated instructions to ignore any outside evidence "further diminishes the possibility that the jurors were actually biased against [Payne]." Id.

As Payne points out, the re-enactment "dramatized the central issue of whether Payne possessed the gun and threw it in the planter box." Pet. at 11. The trial featured conflicting testimony about whether Payne "made throwing gestures" near the box. Ex B. (dkt. 8) at 80, 94, 185-86. The officer who arrested Payne acknowledged that he never saw a gun, or anything else, in Payne's hand as he ran away. Id. at 132, 142. The officer also testified that it was possible that someone other than Payne tossed the gun in the planter box, and the scant fingerprint impressions from the weapon could not be linked to Payne. Id. at 133, 68-71. Payne argues that these facts clearly establish that the experiment must have played a central role in the jury's deliberations, notwithstanding the trial court's repeated instructions against it. Pet. at 14. "To rely upon a jury instruction to correct the influence of an event as tangible and immediate as the experiment [at issue here] is to underestimate the power of personal experience." Id.

Payne seeks support from three cases in which the Ninth Circuit held that extrinsic evidence deprived defendants of their right to fair trial. See Traverse 6-7. In Marino v. Vasquez, the court found prejudicial misconduct when one juror looked to an outside definition of a legal term during deliberations and another conducted a gun-angle experiment during the trial. 812 F.2d 499, 501-03 (9th Cir. 1987). The court in Sassounian v. Roe found prejudice when some jurors learned of inadmissible evidence related to the defendant's motive and discussed it during deliberations. 230 F.3d 1097, 1109-11 (9th Cir. 2000). And

in United States v. Vasquez, the Ninth Circuit ordered habeas relief because jurors examined evidence of a prior conviction and other inadmissible documents that had been stuffed in a court file and accidentally left in the jury room, for only four hours, on the first day of deliberations. 597 F.2d 192, 192-93 (9th Cir. 1979).

These cases, however, differ from Payne's in at least two important ways. First, in none of them does it appear that the trial judge issued a curative instruction. See e.g., Sassounian, 230 F.3d at 1111 ("Because [the judge] did not know that the jury found out about the phone call until after the verdict, the jury was never told not to consider it."). Second, each of the cases includes substantial proof that the jury discussed or examined the outside evidence during deliberations. See e.g., Marino, 812 F.2d at 502-03 (jurors acknowledging that extrinsic evidence made its way into deliberations and was considered).

Payne's trial judge admonished the jurors for their pre-deliberation experiment and ordered them not to consider it. Ex. E at 6-7. Moreover, Payne has not offered any evidence that the jury violated this instruction by discussing or considering the experiment during their deliberations. All he musters are implications based on the fact that some jurors already had violated one instruction – by conducting the forbidden experiments at the crime scene – and on the belief that the jurors simply could not have ignored what they learned from such a supposedly illuminating experiment. This case, therefore, is not the same as those Payne invokes. As such, neither those cases nor any other of Payne's assertions undermine the reasonableness of the decision of the state Court of Appeals or show that its decision was contrary to clearly established United States Supreme Court precedent.

Accordingly, the Court DENIES the petition as to this claim.

**B.     Ineffective Assistance of Counsel**

Payne bases his ineffective-assistance claim on his trial attorney's failure (1) to attend the visit to the crime scene, and (2) to investigate the effect of the jurors' re-enactment through an evidentiary hearing. Pet. at 15. Payne concludes that had the trial lawyer not acted so unreasonably in those regards, "there is a reasonable probability . . . that the court would have granted a mistrial . . . ." Id. at 18.

7

### 1. Legal Standard

To prevail here, Payne must establish two things. First, he must show that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must show that the deficient performance raised "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. See Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11 (2011). This "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

### 2. State Court Proceedings

Applying Strickland's two-step analysis, the state Court of Appeal disagreed with Payne's ineffective assistance claim. Ex. E at 10-11.

First, the court examined whether the trial lawyer's conduct was unreasonable. Such a finding would require Payne to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 9 (citing People v. Fairbank, 16 Cal. 4th 1223, 1243 (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted)). The court noted that "the record is silent as to why" the defense attorney acted as he did. Id. at 9. It found that Payne based his claim "on rank speculation," because his only argument was that the attorney's presence at the crime-scene visit "might have minimized or prevented some of the misconduct." Id. at 9-10. The court also noted that Payne failed to make "an affirmative showing that trial counsel's response to the report of juror misconduct was ineffective." Id. at 10. It therefore had to "presume that counsel's decision not to take more aggressive measures on appellant's behalf was a matter of trial strategy based on his assessment that the court's prompt curative instructions were sufficient

8

1  to cure any harm." Id. That strategy, the court concluded, "was a decision within the range
2  of reasonable competence which did not fall below an objective standard of reasonableness."
3  Id. (citation and internal quotation marks omitted).

4        The state court's decision was neither contrary to nor an unreasonable application of
5  federal law. In his petition to this Court, Payne acknowledges at least one legitimate reason
6  why the trial attorney might have chosen not to seek an evidentiary hearing related to the jury
7  misconduct: "a hearing [could] magnify the importance of the incident, informing all jurors
8  about an incident that arguably a few had actually observed." Pet. at 17-18. Payne seeks to
9  mitigate this point by suggesting that such a strategy rests on what he argues is the faulty
10 premise that "only a few jurors witnessed or discussed the experiment" and that some
11 additional legwork could have led to the pursuit of another strategy. Id. at 18. This is
12 precisely the type of scrutiny that Strickland forbids. See 466 U.S. at 689 ("It is all too
13 tempting for a defendant to second-guess counsel's assistance after conviction or adverse
14 sentence[.]"). Therefore, the state Court of Appeal did not contradict or unreasonably apply
15 federal law when it found that the failure to seek an evidentiary hearing was not unreasonable
16 conduct.

17       The failure of the defense lawyer to attend the crime-scene visit presents a more
18 difficult question. Such conduct certainly seems unwise, if not unreasonable. But the proper
19 question before this Court is not whether it thinks the lawyer's conduct was unreasonable; it
20 instead must ask whether "there is any reasonable argument that counsel satisfied
21 Strickland's deferential standard." Harrington, 131 S. Ct. at 788. To this end, the state Court
22 of Appeal noted that it is Payne's burden to show that the failure to attend the crime-scene
23 visit "was not a tactical choice." Ex. E at 8. "[W]e must reject the defendant's claim unless
24 counsel was asked for an explanation and failed to provide one or there could be no
25 satisfactory explanation for the omission." Id. at 8-9 (citation omitted). Given the "doubly
26 deferential" standard that applies here, this argument suffices. Payne's trial attorney does not
27 appear to have been asked for an explanation, nor is it impossible that the lawyer had a
28

9

1 satisfactory reason not to accompany the jury. Perhaps, for example, the attorney feared his
2 presence might draw undue attention to a particular aspect of the crime scene.

3 In any event, even if the lawyer's conduct was unreasonable, the claim must fail
4 because the state Court of Appeal reasonably found that trial counsel's conduct was not
5 prejudicial. Here, the court found that Payne failed to overcome the presumption that the
6 jury would heed the trial judge's curative instructions to disregard the crime-scene re-
7 enactment. Id. at 11. Accordingly, it held that Payne failed to show "a reasonable
8 probability" of a different result but for the lawyer's conduct and that, therefore, the conduct
9 was not prejudicial. Id.

10 This conclusion is neither contrary to, nor an unreasonable application of, federal law.
11 Payne insists before this Court that there would be a "reasonable probability" of a mistrial
12 had trial counsel investigated the re-enactment rather than rely on the trial court's curative
13 instructions. Pet. at 18. But the state court's focus on the curative effect of the trial court's
14 instructions combined with the presumption of juror compliance leads this Court to conclude
15 that the Court of Appeal's decision withstands AEDPA-based review.

16 Accordingly, the Court DENIES relief as to this claim.

### C. Prosecutorial Misconduct

18 Before trial, Payne and the state stipulated to the fact of a prior felony conviction. Id.
19 at 20. The stipulation required that the jury would learn only that he had been convicted of a
20 felony; the jury would not learn about the nature of the felony. Id. Just before the jury began
21 to deliberate, the prosecution realized it had accidentally stipulated away the charge that
22 Payne unlawfully possessed a gun as a "violent" felon. Id. The trial court allowed the
23 prosecution to reopen its case on that count, and to avoid confronting the jury with the fact
24 that he had been convicted of a violent felony, Payne agreed to waive a jury trial on the re-
25 opened charge. Id. at 20-21.

26 Soon after making this agreement, the focus of which was not allowing the jury to
27 know the nature of Payne's prior convictions, the prosecutor told the jury at closing argument
28 that "the defendant had previously been convicted of a violent felony – of a felony." Id. at

10

21. The trial judge noted the impropriety of the remark, but he denied a motion for a mistrial. Id.

Payne asserts two grounds for prosecutorial misconduct. See Pet. at 20-21. First, he argues that a prosecutorial slip-of-the-tongue during closing argument unconstitutionally violated his agreement to waive a jury trial on one of his charges. Id. at 21-22. Payne has not "fairly presented" this issue to the state courts,[3] so this Court must dismiss the claim to the extent that it rests on the violation of the plea agreement. See Casey v. Moore, 386 F.3d 896, 918 (9th Cir. 2004) (holding that petitioner does not exhaust a federal claim when he presents it "for the first and only time to the state's highest court on discretionary review").

Second, Payne contends that the prosecutor's gaffe itself unduly prejudiced the jury and therefore deprived him of a fair trial. Pet. at 23-24. The state Court of Appeal rejected this claim. It noted that "a prosecutor's intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness that it makes the conviction a denial of due process." Ex. E at 14 (citing People v. Hill, 17 Cal. 4th 800, 819 (1998)). The court acknowledged that the prosecutor's conduct was improper, albeit accidental. Id. at 13. But it determined that because the prosecutor quickly corrected the one-time slip, and because the judge properly instructed the jury not to think about the nature of Payne's prior conviction, "[a]ny harm flowing from the alleged misconduct was thereby cured." Id.

This comports with federal law and is not an unreasonable application of United States Supreme Court precedent. Prosecutorial misconduct violates a defendant's due process rights when it "infect[s] the trial with unfairness." See Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Under

---

[3] Payne did not raise this issue before the state Court of Appeal. Pet. for Review, Ex. H (dkt. 8) at 22-23 (acknowledging this fact in petition to state Supreme Court). He had tried to do so, but only after briefing was closed; the Court of Appeal denied his application to brief additional issues. Id. Because Payne raised this issue before the Court of Appeal in a "procedural context" that made it unlikely it would be heard, he did not "fairly present" the claim there. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding a claim as unexhausted where it was "presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor[.] (citation omitted)). Petitioner has not pointed to any such reasons here.

11

this standard, it is entirely reasonable for the Court of Appeal to have concluded that the single mistake, unaccompanied by any other basis for a misconduct claim and presumptively cured by the judge's instruction, did not render Payne's trial fundamentally unfair. Accordingly, the COURT DENIES relief here as well.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES the petition.

**IT IS SO ORDERED.**

Dated: March 16, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE